UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION : : : : : : : : This Document Relates To: : *Cohen v. United States* : | Master File:    07-mc-0014 (RMU) <br><br> Member Cases: <br> 06-cv-483:    *Sloan et al. v. United States* <br> 07-cv-050:    *Gurrola et al. v. United States* <br> 07-cv-051:    *Cohen v. United States* <br> 06-cv-11459:  *Belloni v. Verizon Commc'ns* <br><br> MDL Docket No. **1798** |

**NEILAND COHEN'S BRIEF IN OPPOSITION TO
THE GOVERNMENT'S MOTION TO DISMISS COHEN'S
<u>CLAIM UNDER THE ADMINISTRATIVE PROCEDURE ACT</u>**

Michael A. Bowen
Attorney Bar Number:  1016965 (Wis.)
Zhu (Julie) Lee
Attorney Bar Number:  1032454 (Wis.)
Isaac J. Morris
Attorney Bar Number:  1053535 (Wis.)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee WI  53202-5306
Telephone:  (414) 271-2400

Michael D. Leffel
Attorney Bar Number:  464721 (D.C.)
FOLEY & LARDNER LLP
150 East Gilman Street
Madison WI  53703-1481
(608) 258-4258

Direct Inquiries to:
Michael A. Bowen
Telephone:  (414) 297-5538
Facsimile:  (414) 297-4900
E-mail:  mbowen@foley.com

**Attorneys for Plaintiff Cohen**

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ..................................................................................................... ii

PROCEDURAL BACKGROUND ............................................................................................ 1

ARGUMENT ............................................................................................................................. 1

I.  BECAUSE MR. COHEN CHALLENGES AN ADMINISTRATIVE ACTION THAT WOULD REQUIRE HIM TO DROP A MERITORIOUS REFUND CLAIM AND ACCEPT LESS THAN HE IS ENTITLED TO IN ORDER TO RECEIVE MONEY THE GOVERNMENT ADMITS OWING HIM, HE HAS AMPLE STANDING ..................................................................................... 2

II. THE NOTICE PROCEDURE IS NOT IMMUNE FROM REVIEW AS A MATTER COMMITTED BY LAW TO AGENCY DISCRETION. ............................... 7

III. BECAUSE MR. COHEN SEEKS NON-MONETARY RELIEF ON GROUNDS WELL RECOGNIZED UNDER ADMINISTRATIVE LAW, THE GOVERNMENT'S SOVEREIGN IMMUNITY OBJECTION FALLS OF ITS OWN WEIGHT. ........................................................................................... 10

IV. THE NOTICE PROCEDURE IS FINAL AGENCY ACTION. .................................. 12

CONCLUSION ........................................................................................................................ 13

MILW_2229336.1

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Banner v. United States*,
303 F. Supp. 2d 1, (D.D.C. 2004), *cert. denied*, ___ U.S. ___, 126 S.Ct.
2021, 164 L.Ed.2d 806 (2006)..................................................................................3-4

*Brooks v. Snow*,
313 F. Supp. 2d 654 (S.D. Tex. 2004), *aff'd sub nom. Brooks v. Dam*, 126
Fed. Appx. 173 (5th Cir.), *cert. denied sub nom. Brooks v. United States*,
___ U.S. ___, 126 S.Ct. 398, 163 L.Ed.2d 276 (2005)...............................................5-6

*Hi-Tech Furnace Systems, Inc. v. FCC*,
224 F.3d 781 (D.C. Cir. 2000).................................................................................7-8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed. 2d 351 (1992)............................................2

*Shelter Island & Greenport Ferry Co. v. United States*,
246 F. Supp. 488 (E.D.N.Y. 1965).............................................................................9

*Steenholdt v. FAA*,
314 F.3d 633 (D.C. Cir. 2003)..................................................................................10

*United States v. State National Bank*,
96 U.S. 30, 24 L.Ed. 647 (1877)................................................................................9

**Statutes**

26 U.S.C. § 6402(a) ............................................................................................7-8, 10

## PROCEDURAL BACKGROUND

In November, 2005, Neiland Cohen filed in the United States District Court for the Eastern District of Wisconsin a putative class action on behalf of individual phone-users, challenging continued collection of the federal excise tax on duration-only long distance telephone charges. In May, 2006, the government abandoned its substantive defense of that tax. It stopped collecting the tax, effective after July 31, 2006, and in October, 2006 announced a procedure for claiming refunds of taxes unlawfully exacted after February 28, 2003.

Promptly after the October, 2006 announcement, Mr. Cohen proposed to amend his complaint to add a claim challenging the refund mechanism under the Administrative Procedure Act. Mr. Cohen and the government stipulated that he could do so, subject to the government's right to move to dismiss the new claim. (The government's motion to dismiss Mr. Cohen's original injunction claim had been denied as moot following the government's abandonment of the tax; its motion to dismiss his refund claim, and its opposition to his motion for class treatment of the refund issue, were already fully briefed.) Judge Randa approved this stipulation on December 14, 2006 – two weeks before the Judicial Panel on Multi-District Litigation granted Mr. Cohen's motion to transfer pending putative class actions to a single court for coordinated or consolidated pretrial treatment.

Mr. Cohen agreed to a deadline extension requested by the government, making its dismissal motion due on February 15, 2006. That motion was therefore filed in this Court on that date. Mr. Cohen submits this brief in opposition to the motion.

## ARGUMENT

The government has acknowledged illegally taking money from Mr. Cohen (along with scores of millions of other individual phone-users), and has recognized a duty to make reparation. It purports to condition the partial repayment it has offered, however, on

1

abandonment of full refund claims such as the one Mr. Cohen is pressing in court, and acquiescence in a narrow and improperly conditioned protocol that appears likely to leave most individual phone-users wholly or partly uncompensated, and a substantial portion of the illegally exacted monies unrefunded.  The essential question raised by Mr. Cohen's APA claim is whether the government can successfully defend those limitations.  The much simpler question raised by the government's motion is whether it has to defend them at all.  The answer is yes.

I. **BECAUSE MR. COHEN CHALLENGES AN ADMINISTRATIVE ACTION THAT WOULD REQUIRE HIM TO DROP A MERITORIOUS REFUND CLAIM AND ACCEPT LESS THAN HE IS ENTITLED TO IN ORDER TO RECEIVE MONEY THE GOVERNMENT ADMITS OWING HIM, HE HAS AMPLE STANDING.**

Although the issue of standing can become convoluted, particularly in the administrative law context, its essential elements are straightforward.  Mr. Cohen has standing to pursue his APA challenge to the government's proposed refund mechanism if he alleges (1) injury in fact, *i.e.*, an actual or imminent invasion of a legally protected interest which is concrete and particularized as opposed to conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed. 2d 351 (1992).

There is nothing esoteric about application of these principles to his case.  Mr. Cohen alleges that he is entitled to a refund nearly twice as large as the $30 "safe-harbor" amount proposed by the government for single-dependent phone-users like him.  (Second Amended Complaint, ¶ 9)  He complains that the government has conditioned participation in its simplified repayment program on his abandonment of the larger meritorious refund claim that he has made and pressed to litigation.  (*Id.*, ¶ 27(d))  He objects that the approach defined in the

2

government's Notice cuts eight months off the appropriate refund period. (*Id*., ¶ 27(a))  And he objects that these limitations, among others, are arbitrary, unreasonable, and unlawful. (*Id*., ¶ 27)

The injury Mr. Cohen identifies, in short, is not a conjectural, hypothetical, philosophical or theoretical objection to the announced program.  It is not a vague fear about some unquantified impact the Notice procedure may have at some point in the future on Mr. Cohen's hedonic or aesthetic interests.  It is a matter of dollars and cents.  If he does not prevail, he will either be out at least 45% of the money wrongfully taken from him, or he will have to forego what is by far the quickest and most efficient way of getting money that the government admits it owes him.  That is injury in fact.

In *Banner v. United States*, 303 F. Supp. 2d 1, 7-8 (D.D.C. 2004), *cert. denied*, ___ U.S. ___, 126 S.Ct. 2021, 164 L.Ed.2d 806 (2006), for example, the court addressed a challenge by District of Columbia residents to a federal statute barring the District from taxing income earned within the District by commuters living outside of it.  The plaintiffs contended the District suffered chronic revenue deficiencies and that they bore "'substantially higher than normal tax burdens'" as a result.  *Id*. at 7 (quoting complaint).  Rejecting the government's attempt to reduce this complaint to a generalized and undifferentiated taxpayer grievance, the court held that the alleged fiscal burden on a particular class of citizens was enough to confer standing.  *Id*. at 7-8.

The injury alleged by Mr. Cohen is even more concrete and direct.  He claims that the government is illegally holding specific amounts of money that belong to him, which it is under an acknowledged legal obligation to return; but that it is unlawfully proposing to make him sacrifice part of his legal entitlement to get some of the money back.  Neither the fact nor the concrete, real-world nature of the claimed injury is in doubt.

3

The causal connection between the agency action he challenges and the injury he alleges is not only direct but is established virtually by definition. But for what he contends are unlawfully arbitrary limitations in the government's Notice protocol, he would not be out the money or deprived of the benefits he claims. The asserted causal relationship is even more direct than the one found sufficient for standing purposes in *Banner*. The court in that case held that allegations that increased tax revenue from commuters would "'ease the burden on overtaxed District residents [and] provide more and better services . . . .'" were enough to establish the causal link required for standing. *See Banner*, 303 F. Supp. 2d at 8 (quoting complaint). The causal link alleged by Mr. Cohen is far less indefinite and far more emphatic.

The government thus misses the point when it protests Mr. Cohen's failure "to allege *that he has even used the Notice procedure,* or has attempted to do so, or will soon do so." (Government's Brief, p. 6 (italics in original)) Mr. Cohen's injury arises precisely from the fact that he *cannot* use that procedure without giving up money or a meritorious claim. That is a key part of what he is complaining about. The government cannot insulate the claimed deficiency from legal attack by invoking one of the very nefarious impacts that make it legally deficient.

The likelihood that the injury will be redressed if Mr. Cohen's challenge is successful logically follows. If the Court determines that it is unlawfully arbitrary and unreasonable for the government to condition use of the Notice procedure on abandonment of claims, then Mr. Cohen will be able to use that procedure without abandoning his. If the Court determines that it is arbitrary and unreasonable to cut off the refunds available under the Notice procedure in February of 2003, then Mr. Cohen will be able to claim refunds for prior months. At a more general level, if the Court finds the Notice procedure deficient on any of the grounds

4

asserted by Mr. Cohen, and tells the government to try again, it is likely (indeed, virtually certain) that Mr. Cohen's situation will be improved.

The government's answer to all of this is that if Mr. Cohen does not like the Notice procedure he can skip it and pursue whatever refund he wishes through litigation. (Government's Brief, pp. 7-8)  That contention is grotesquely unrealistic; the IRS itself has recognized that calling upon individual phone-users to "locat[e] 41 months of old phone bills and analyz[e] those bills to determine the taxes paid" is unrealistically burdensome.  (*See* IRS News Release IR-2006-137 (Aug. 31, 2006), p. 1.) (hereafter , "IRS Release").[1]  The important point for present purposes, however, is that the argument is properly addressed to the merits of Mr. Cohen's APA challenge, not to his standing to bring that challenge.  Whether litigation is a realistic alternative remedy or not, the government does not and could not credibly question Mr. Cohen's allegation that he would be directly and immediately better off – in the emphatically concrete sense that, among other things, he would have more money in his pocket sooner – if he could obtain complete relief through the Notice procedure or, at a minimum, take advantage of that procedure without sacrificing a major portion of his claim.

The government overlooks precisely this point in relying on *Brooks v. Snow*, 313 F. Supp. 2d 654 (S.D. Tex. 2004), *aff'd sub nom. Brooks v. Dam*, 126 Fed. Appx. 173 (5th Cir.), *cert. denied sub nom. Brooks v. United States*, ___ U.S. ___, 126 S.Ct. 398, 163 L.Ed.2d 276 (2005).  (Government's Brief, p. 6)  The dispute in that case involved a Treasury regulation dealing with assessment of claimed deficiencies in tax payments and the interest accrued on

---

[1] This release was attached as Exhibit E to an October 18, 2006 declaration by David R. Williams, IRS Director of Earned Income and Health Care Tax Credits.  The Williams declaration was included in a "Status Report" filed by the government in the Wisconsin action on October 27, 2006 as Docket No. 34-14.  A copy of the release accompanies this brief as Exhibit A for ease of reference.

5

them, and negotiation of settlements through "offers of compromise." The *Brooks* plaintiff attacked the operative regulation because it provided for accrual of interest during long delays that plaintiff said were the Treasury's fault.

The court in *Brooks* held that the plaintiff lacked standing because he had never applied under the regulation for the very relief he was seeking in court, and specifically had never made an offer of compromise. *Brooks*, 313 F. Supp. 2d at 659. The procedure provided for by the regulation held out at least the possibility of solving the problem plaintiff was complaining about: offers of compromise and ensuing negotiations could have resulted in a resolution that realistically reflected the government's responsibility for excess interest charges due to its own delays. Because plaintiff had not even tried to resolve the problem that way, his contention that his position was inevitably compromised by the regulation's interest provisions was too "highly speculative and uncertain" for standing purposes. *Id*. at 660.

In diametric contrast to the regulation attacked in *Brooks*, the Notice at issue here holds out no possibility whatever of any application, negotiation, or interaction under it that might obviate the problems Mr. Cohen complains about. He has already made a request for a full refund, and the government has already rejected it. The Notice would not allow him to claim the safe-harbor amount while reserving the right to maintain his refund suit and pursue the additional money he is owed through it; he alleges on the contrary that it expressly precludes such an approach. Nor would the Notice allow him to claim the full amount he is entitled to despite lacking the complete documentation that the Notice requires.

The injury alleged in *Brooks* was too speculative for standing purposes because the regulation attacked in that case was flexible enough to hold out the possibility of the *Brooks* plaintiff receiving his claimed due under it. The rigid and inflexible, one-size-fits-all, our-

6

way-or-no-way approach of the Notice procedure at issue here has precisely the opposite effect: not only is Mr. Cohen's concrete injury not speculative, it is certain.[2]

## II. THE NOTICE PROCEDURE IS NOT IMMUNE FROM REVIEW AS A MATTER COMMITTED BY LAW TO AGENCY DISCRETION.

The government admits that the agency-discretion exception to APA review applies only in "'rare instances'". (Government's Brief, p. 9)  The courts have repeatedly admonished the government that they "do not lightly place a matter" within that category, "as the APA embodies 'a basic presumption of judicial review.' [citing cases]  The exception . . . is a 'very narrow' one . . . . " *Hi-Tech Furnace Systems, Inc. v. FCC*, 224 F.3d 781, 788 (D.C. Cir. 2000).

The government nevertheless seeks to invoke that exception here based on the breathtaking assertion that "there is no law that cabins the IRS's discretion to offer to make tax refunds or to determine the terms of that offer" and therefore no "meaningful standards by which a court could review the exercise of that discretion." (*Id.,* p. 10)  This startling pronouncement overlooks 26 U.S.C. § 6402(a), which unambiguously instructs the Treasury that, "In the case of any overpayment, the Secretary . . . shall, subject to subsections (c), (d) and (e), refund any balance to such person." 26 U.S.C. § 6402(a).  Refunding the entire amount of overpayments is not a matter of sovereign grace or the good pleasure of the IRS; it is a statutory duty.  Far from enjoying unlimited and unreviewable discretion, the IRS has no discretion at all.

---

[2] The government suggests a zone of interests standing objection but does not develop it except insofar as it is conflated with its overall standing argument.  It could not credibly do so.  Denying that Mr. Cohen, a phone-user from whom excise taxes were illegally exacted, is within the zone of interests of the statutes defining the limits of the tax in question or, for that matter, of the government's Notice protocol that ostensibly seeks to correct the government's violation of that statute, would mock the plain meaning of the term.

7

The government's response, presumably, would be that the relevant issue is not its general obligation to refund tax overpayments but its right to develop an alternative refund procedure that makes due allowance for the unique nature of this particular mass-refund problem, and does not require taxpayers to jump through all the hoops that are required for refund of individual overpayments.  Implicit in the government's argument is the notion that in improvising an extraordinary refund procedure such as the one here the IRS is free to do whatever seems best to it, granting or withholding benefits at will.  For at least three reasons, this premise is mistaken.

First, the government cites no law that says this or anything like it.  When Congress intends to commit a matter to unfettered agency discretion, it knows how to say so.  *See, e.g., Hi-Tech Furnace Systems, Inc. v. FCC*, 224 F.3d 781, 788 (D.C. Cir. 2000)(dealing with statute that authorized FCC to investigate specified matters "'. . . in such manner and by such means as it shall deem proper.'").  The only statutory authority cited by any party for the IRS to pass out billions of dollars in illegally-exacted excise tax proceeds to people who check boxes on their tax returns is the general mandate to refund overpayments cited above, 26 U.S.C. § 6402(a).[3]  That mandate does not say that the IRS can do whatever it wants to.  On the contrary, it imposes a specific duty:  refund the overpayment.  That duty cannot be satisfied by giving phone-users what the government knows are only partial refunds, much less by requiring taxpayers to surrender part of what the government admits they are owed in order to get the rest.

---

[3] If the government contends that it is not § 6402(a) that authorizes the Notice procedure, then the (presumably unintended) implication of its contention that there is "no law" applicable to the issue is that IRS has embarked upon the disbursement of billions of dollars without any statutory authority whatever.

8

Second, the government's May, 2006 admission that its exactions were in fact unlawful created an independent obligation to disgorge the ill-gotten takings and provide an adequate remedy for the victims of its lawless behavior. Even if it were assumed for the sake of discussion that the government could make claimants jump through procedural and bureaucratic hoops as long as the wrongfulness of its conduct were fairly contested, no such let-them-eat-cake attitude is viable now that it has confessed error. Once the government admitted wrongfully taking billions of dollars from phone-users, restitution was no longer a discretionary matter; it became an affirmative legal duty. *See United States v. State National Bank*, 96 U.S. 30, 35, 24 L. Ed. 647 (1877)(where the government acknowledges that it has no right to tax revenue that it has taken, it is "obliged by natural justice and equity" to return the money to its rightful owners); and *Shelter Island & Greenport Ferry Co. v. United States*, 246 F. Supp. 488, 494 (E.D.N.Y. 1965)(where "there is no intimation of a Government belief, even a mistaken belief, that it was entitled to the funds" that were exacted "through a mistaken exercise of Governmental coercion", then "the undenied ownership and the absence of a claim of right to retain must be taken as a promise of repayment.").

Third, assume for the sake of discussion that the government had no *a priori* obligation to do anything about the fact that it found itself sitting on billions of dollars that did not belong to it and that it had acquired by breaking the law. As soon as the government decided that it *was* going to do something, whether it had to or not, that stunningly counter-intuitive assumption became not only implausible but irrelevant. Even if the government had no obligation to do anything at all, once it decided to improvise a remedy it had an obligation to shape that remedy in a way that avoided gross unfairness, material insufficiency, and arbitrary or illegitimate conditions.

9

The government is thus fundamentally mistaken in contending that no meaningful and manageable standards are available for this Court to apply. Section 6402(a) and the common law confirm the self-evident intuition that the government must give back money to which it had no right in the first place. The standard could scarcely be more straightforward: the government is required to return "the overpayment" – not some fraction of that overpayment that the government finds it convenient to disburse. Indeed, in the August 31, 2006 IRS Release referred to above, IRS Commissioner Mark Everson acknowledged a readily applicable standard when he insisted that the Notice procedure would be "simple and fair."[4] As the D.C. Circuit said in *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003), "This Court has noted that judicially manageable standards 'may be found in formal and informal policy statements and regulations as well as in statutes.'" [citing case] Measuring the means deployed for this purpose under the Notice procedure against the applicable obligation and the declared objective of that procedure will not present any mystery for the Court.

### III. BECAUSE MR. COHEN SEEKS NON-MONETARY RELIEF ON GROUNDS WELL RECOGNIZED UNDER ADMINISTRATIVE LAW, THE GOVERNMENT'S SOVEREIGN IMMUNITY OBJECTION FALLS OF ITS OWN WEIGHT.

The government says that Mr. Cohen's APA claim is actually a back-door refund claim that dare not speak its name, and therefore does not come within the APA's waiver of sovereign immunity. (Government's Brief, pp. 13-14) As evidence of this, the government points to what it calls "the principal relief sought by" Mr. Cohen, *i.e.*, an order seeking an effective class-wide restitutionary remedy. (*Id*., p. 13 & n.48 (quoting second amended complaint))

---

[4] See Exhibit A and footnote 2.

The short answer to this argument is ¶ (d) of the prayer for relief, which the government overlooks. That provision seeks a "declaration that the government may not lawfully condition participation in the restitutonary process it has proposed on abandonment of refund requests, and an injunction against enforcement of any such limitation". (Second Amended Complaint, p. 13) That not only is not a disguised refund request, it is not colorably a request for monetary relief of any kind; and it relates directly to the APA claim that the second amended complaint added.

Paragraph (c) of the prayer for relief – the provision the government quotes – is likewise not a refund request, although it would have monetary consequences. It is likewise directed to correction of the deficiencies Mr. Cohen has identified in the Notice procedure, rather than to payment of individual refund claims. Even if it were viewed as an indirect refund request, moreover, such a request would be warranted by the *first* count in the second amended complaint, *i.e,* Mr. Cohen's refund claim, and by the motion for class certification with respect to *that* claim which was already pending when the second amended complaint was filed. (*See* Second Amended Complaint, ¶¶ 6-10, 22-25.) That request for relief therefore could not somehow negate the waiver of sovereign immunity with respect to the independent APA claim.

The government suggests that the APA claim – a prompt and obvious reaction to the Notice procedure announced by the government – was tacitly intended not to complement the refund claim but to supplant it, supposedly in reaction to the *in terrorem* effect that the government rather optimistically imputes to the jurisdictional arguments it had raised. That view may most charitably be characterized as wishful thinking. The stipulation to filing and service of the second amended complaint expressly recognized the refund claim by providing that the government's already pending motion to dismiss could stand as its response to that claim in the

11

second amended complaint. (November 27, 2006 Stipulation, ¶ 2) The government cannot make the refund claim go away simply by ignoring that claim in its brief.

Mr. Cohen has challenged administrative action on grounds expressly recognized by the APA, and has requested non-monetary relief with respect to that action. The APA's waiver of sovereign immunity under those circumstances could scarcely be clearer.

**IV.    THE NOTICE PROCEDURE IS FINAL AGENCY ACTION.**

The government asserts that the second amended complaint fails to allege that there is no other adequate remedy in court for the problems Mr. Cohen imputes to the Notice procedure. (Government Brief, p. 15) This is not merely mistaken but baffling.

Paragraph 33 of the pleading alleges in terms that, "In the vast majority of these cases [*i.e.,* wrongly taxed individual phone-users], if not in all of them, the amount of restitution to which any given individual is entitled is far too small to support an individual civil action to pursue restitution, by suit for refund or otherwise." (Second Amended Complaint, ¶ 33) Paragraphs 29 alleges that the deficiencies in the Notice procedure "if not corrected, will improperly interfere with judicial consideration of appropriate class remedies and limit the restitution effected . . . to a minor fraction of the total amount unlawfully exacted, thereby preventing plaintiff and the . . . . class from receiving the full remedy to which they are entitled." (*Id.*, ¶ 29) Allegations are not missing from the pleading simply because the government chooses to disregard them.

Beyond this, the government has devoted most of its energy in this litigation to raising as many objections as it could imagine to "the time-honored, tax- refund-suit procedure" that it touts as an alternative to APA review. (Government Brief, p. 15) It identifies no other judicial remedy. Having repeatedly insisted that the refund suit procedure is legally unavailable,

12

the government would be in no position to proffer it as an effective alternative even if it were not unrealistic as a matter of fact.

Third, even if refund suits could effectively be pursued on a non-class basis, success in those suits would not solve the problems Mr. Cohen has identified with the Notice procedure. Anyone who obtains a judgment for an individual refund will by definition have been victimized by conditions that precluded resort to the Notice procedure – conditions that Mr. Cohen attacks as illegitimate. Anyone who pursues the Notice procedure (other than an obsessive-compulsive pack-rat who saves all of his bills for years) will have to forego the opportunity to pursue the full refund to which he is entitled. The result will be that money wrongfully taken from phone-users will remain in the government's hands.

The government says finally that the second amended complaint fails to allege that "legal consequences will flow" from the Notice Procedure. (Government Brief, pp. 15-16) Myopia is not analysis. Paragraphs 27(a) through 27(d) of the pleading in fact allege precisely such consequences in considerable detail. So do ¶¶ 28 and 29. The government's contention is a makeweight.

## CONCLUSION

For the reasons outlined in this brief, Neiland Cohen respectfully requests that the government's motion to dismiss the APA claim in his second amended complaint be denied.

Dated this 28th day of February, 2007.

> s/ Michael A. Bowen
> Attorney Bar Number: 1016965 (Wis.)
> Zhu (Julie) Lee
> Attorney Bar Number: 1032454 (Wis.)
> Isaac J. Morris
> Attorney Bar Number: 1053535 (Wis.)
> FOLEY & LARDNER LLP
> 777 East Wisconsin Avenue
> Milwaukee WI 53202-5306

13

       Telephone:  (414) 271-2400

       Michael D. Leffel
       Attorney Bar Number:  464721 (D.C.)
       FOLEY & LARDNER LLP
       150 East Gilman Street
       Madison WI  53703-1481
       (608) 258-4258

       <u>Direct Inquiries to:</u>
       Michael A. Bowen
       Telephone:  (414) 297-5538
       Facsimile:  (414) 297-4900
       E-mail:  mbowen@foley.com

       **Attorneys for Plaintiff Cohen**

# IRS News Release

Media Relations Office     Washington, D.C.     Media Contact: 202.622.4000
www.IRS.gov/newsroom     Public Contact: 800.829.1040

## IRS Announces Standard Amounts for Telephone Tax Refunds

IR-2006-137, Aug. 31, 2006

WASHINGTON — The Internal Revenue Service today announced the standard amounts that most long-distance customers can use to figure their telephone tax refund. These amounts, which range from $30 to $60, will enable millions of individual taxpayers to request the telephone tax refund without having to dig through old phone bills.

In general, anyone who paid the long-distance telephone tax will get the refund on their 2006 federal income tax return. This includes individuals, businesses and nonprofit organizations. The 2006 return is usually filed during 2007.

The standard amounts are based on the total number of exemptions claimed on the 2006 federal income tax return. The standard amounts are $30 for a person filing a return with one exemption, $40 for two exemptions, $50 for three exemptions and $60 for four or more exemptions. For example, a married couple filing a joint return with two dependent children (for a total of four exemptions) will be eligible for the maximum standard amount of $60.

"The easiest way for eligible taxpayers to get their money back is to use the standard amounts," said IRS Commissioner Mark W. Everson. "These amounts save taxpayers from locating 41 months of old phone bills and analyzing these bills to determine the taxes paid. We believe the standard amounts are both reasonable and fair."

To get the standard amount, eligible taxpayers only need to fill out one additional line on their regular 2006 return. The IRS is creating a special short form (Form 1040EZ-T) for those who don't need to file a regular return.

The standard amounts are based on actual telephone usage data, and the standard amount applicable to a family or other household reflects the long-distance phone tax paid by similarly sized families or households. Those who paid the long-distance tax on service billed after Feb. 28, 2003 and before Aug. 1, 2006 are eligible for a refund.

Only individuals can use the standard amounts. Alternatively, individual taxpayers can choose to figure their refund using the actual amount of tax paid.

Details on requesting the telephone tax refund will be included in all 2006 tax return materials and on irs.gov.

Though businesses and nonprofits must base their telephone tax refund on the actual amount of tax paid, the IRS is looking for ways to make the refund process easier for these taxpayers. The IRS is considering an estimation method businesses and nonprofits may use for figuring the tax paid.

**EXHIBIT A**

"Businesses and nonprofits generally have more varied usage patterns than individuals do," Everson said. "We've met with a number of business and nonprofit groups to understand their concerns, and we plan to continue to work with them to come up with a reasonable method for estimating telephone excise tax refund amounts."

Comments and suggestions for simplifying the refund process for businesses and nonprofits should be e-mailed to Telephone.Tax@irs.gov. The deadline for these comments is Sept. 15, 2006.

— 30 —